[NEW YORK SPECIAL TERM, May 7, 1860. *Hogeboom*, Justice.]

———•••———

THE PEOPLE ex rel. Alexander H. Van Rensselaer and others, commissioners of highways of the town of Claverack, *vs.* JAMES VAN ALSTYNE and others, referees &c.

In general, if not universally, the supervisory power of the supreme court over inferior tribunals, by means of the common law writ of certiorari, only extends to questions touching the *jurisdiction* of the subordinate tribunal, and the regularity of its proceedings. If such tribunal neither exceeds its powers, nor departs from the forms prescribed to it by law, its decisions upon the merits are final and conclusive.

The question of jurisdiction is open to review, on a writ of that nature ; and so are the *facts* bearing upon the question of jurisdiction.

The People *v.* Van Alstyne.

The inferior tribunal may, and must, pass upon the facts touching its jurisdiction; but its decision is not conclusive. If the facts are the subject of dispute, they are to be submitted to the revisory judgment of the supreme court.

Hence, the evidence touching those facts must be returned upon certiorari, to the end that the supreme court may examine the same, and determine whether the inferior tribunal rightfully assumed jurisdiction, and whether it came to a right conclusion upon the facts which gave it the power to act.

If a road, proposed to be laid out, and actually ordered by the commissioners of highways to be laid out as a public highway, can never become such, in consequence of its terminating in a private inclosure or a private way, it is a question which goes to the jurisdiction, and lies at the very foundation of the authority of the commissioners to act.

All evidence, therefore, tending to show the character of the latter way — whether it be private or public; whether it was applied for and was laid out as a private way; whether it has been used as such; whether it is closed at one end or not; and generally how and in what manner it has been laid out and used, must be regarded as legitimate evidence before the referees, upon a jurisdictional question, and properly reviewable on certiorari, directed to the referees.

On such a writ, evidence tending simply to show the benefit or utility of the proposed road; to what extent it is likely to be used by, and to serve the public; and how large a public is to be thus benefited, involves an inquiry simply as to the merits of the application, and the propriety of the road, and relates to questions as to which the decision of the referees is conclusive.

The court, therefore, will not compel the return of evidence of that character.

Decisions of the referees, as to the admission or rejection of evidence bearing only on those questions, are not reviewable upon certiorari. They are questions upon which the decisions of the referees are conclusive.

The referees may be required to return whether the applicant, and other owners of land on the proposed route procured the certificate of the freeholders by offering to give the land, upon such proposed route, in case the road was laid out; or whether such offer was made *prior* to the making of the certificate of the freeholders, and was withdrawn afterwards.

MOTION on the part of the people and the relators to compel a further return by the referees to the writ of certiorari issued to them in this matter to return the proceedings had before them on the appeal of Peter H. Kipp from the decision of said commissioners refusing to lay out a certain highway in the town of Claverack in the county of Columbia, applied for by him. The referees reversed the decision of the commissioners and made an order laying out such highway.

The People *v.* Van Alstyne.

The commissioners, feeling aggrieved thereby, sued out a common law certiorari to reverse their proceedings, which was allowed ex parte at the Columbia special term in April, 1860. The referees made a return thereto, which the commissioners claimed to be insufficient and as not fully answering the requirements of the writ or of the law in such cases, and the latter, at the Albany general term in May, 1860, obtained ex parte an order for the referees to show cause at the June special term why they should not be compelled to make a further return. The referees now showed for cause that the writ was allowed ex parte, and that they had, as they claimed, made a return fully answering the requirements of the law. This return embraced all the preliminary proceedings up to the period when the application came on for hearing before the referees, upon the merits, their decision upon some points raised by the commissioners, and also their decision upon such application. On such hearing, the commissioners, in addition to other evidence and offers of evidence, offered to show that the proposed highway terminated, at one end thereof, in a private road, or what was claimed by them to be such; and also that the freeholders' certificate was obtained, or the making of it more or less affected, by an offer on the part of the applicant and other owners of land on the proposed route to give their land, which offer, it was proposed to be proved, was, subsequently to the making of the certificate, in some way modified or withdrawn. The commissioners also claimed that the referees erroneously admitted evidence tending to show that the proposed highway would be beneficial to citizens of the town of Ghent, as well as to the town of Claverack where the premises were situated. Other objections to evidence and offers of evidence were made by the commissioners and overruled by the referees. The respondent claimed that no part of the proceedings was to be returned, except such as related to the jurisdiction and regularity of action of the referees. The commissioners claimed that all their decisions on questions of law were reviewable.

*C. P. Collier,* for the commissioners.

*John Gaul, jun.* for the referees.

*By the Court,* HOGEBOOM, J.  A certiorari from the supreme court lies to redress injuries committed by inferior tribunals or officers invested with judicial powers. (*Lawton* v. *Commissioners of Cambridge,* 2 *Caines,* 179.  *Le Roy* v. *Mayor &c. of New York,* 20 *John.* 430.  *Wildy* v. *Washburn,* 16 *id.* 49.  *Ex parte Mayor of Albany,* 23 *Wend.* 277.)

Sometimes it is expressly authorized and its limits defined by *statute,* and then of course the nature and extent of the power, and the cases in which it is to be exercised, depend mainly, if not entirely, upon the provisions of the statute. (*Matter of Wrigley,* 8 *Wend.* 134.  *President and Trustees of Brooklyn* v. *Patchen, Id.* 47.  *Roach* v. *Cosine,* 9 *id.* 227. *Rowan* v. *Lytle,* 11 *id.* 616.  *Anderson* v. *Prindle,* 23 *id.* 616.  *Niblo* v. *Post's Adm'rs,* 25 *id.* 280.  *Buck* v. *Binninger,* 3 *Barb.* 391.  *Morewood* v. *Hollister,* 2 *Seld.* 320.)

Sometimes there is no statutory regulation on the subject, and then the writ is denominated a *common law certiorari.* (*Johnson* v. *Moss,* 20 *Wend.* 145.  *Comstock* v. *Porter,* 5 *id.* 98.  *Kellogg* v. *Church,* 3 *Denio,* 228.)

In general, if not universally, the supervisory power of the supreme court over inferior tribunals, by means of this latter writ, only extends to questions touching the *jurisdiction* of the subordinate tribunal, and the *regularity* of its proceedings. If such tribunals neither exceed their powers nor depart from the forms prescribed to them by law, their decisions upon the merits are final and conclusive. (*Birdsall* v. *Phillips,* 17 *Wend,* 464.  *Prindle* v. *Anderson,* 19 *id.* 391.  *People* v. *Judges of Dutchess,* 23 *id.* 360.)

It will be seen from the above cases that even under such a limitation a considerable field remains for the exercise of the revisory power of the supreme court.  It embraces all questions of *jurisdiction*—of power—of authority to act—all

questions of *regularity* of proceeding; that is, all questions whether the inferior tribunal has kept within the boundaries prescribed for it by the express terms of the statute law, or by well settled adjudications of the common law.

Where, as is most generally the case, the inferior tribunal is one of special and limited jurisdiction, no presumption in favor of its jurisdiction arises, and it therefore must derive its power to act from facts affirmatively established. These facts must be made positively to appear, in the first instance; and not only so, but they are open to contestation afterwards; at least so long as the question remains before the same tribunal, and until that tribunal has definitively passed upon the question after hearing the parties and listening to such evidence, pertinent to that question, as they may choose to present. (*Striker* v. *Kelly*, 7 *Hill*, 24. *Harrington* v. *The People*, 6 *Barb.* 610. *People* v. *Cassels*, 5 *Hill*, 168. *Prosser* v. *Secor*, 5 *Barb.* 607. *People* v. *Comm'rs of Seward*, 27 *id.* 97.)

As this question is one of jurisdiction, it is open to review on a common law certiorari. And not only so, but the *facts* bearing on the question of jurisdiction are open to review. The inferior tribunal may and must pass upon the facts touching their jurisdiction, but their decision is not conclusive. Otherwise they may exercise arbitrary power, decide judicially that the case is within their jurisdiction, and bid defiance to the superior court. This I think was never intended; but that on the contrary where the facts constituting jurisdiction were the subject of dispute, they were to be submitted to the revisory judgment of the higher power.

Hence the evidence touching those facts must be returned upon certiorari, to the end that this court may examine the same, and determine whether the inferior tribunal rightfully assumed jurisdiction, and whether it came to a right conclusion upon the facts which gave it the power to act. (*People* v. *Goodwin*, 1 *Selden*, 572.)

A certiorari lies to the judges of the common pleas (for whom referees appointed by the county court have now been substi-

tuted,) to remove proceedings on an appeal to them from commissioners of highways. (*Lawton* v. *Com'rs of Cambridge*, 2 *Caines*, 179. *Com'rs of Kinderhook* v. *Claw*, 15 *John.* 537. *Allyn* v. *Com'rs of Schodack*, 19 *Wend.* 342. *People* v. *Goodwin*, 1 *Selden*, 568.)

Among the questions of jurisdiction thus subject to review is the question whether the owner of enclosed, improved or cultivated land through which a highway has been laid has given his consent thereto ; (*People* v. *Goodwin*, 1 *Seld.* 568 ;) also the question whether the persons making the certificate of its necessity were freeholders; (*People* v. *Com'rs of Seward*, 27 *Barb.* 94 ;) also the question whether they were *twelve* in number; (*Town of Gallatin* v. *Loucks*, 21 *Barb.* 578 ;) also the question whether the highway was laid out through the *yard* or *garden* of the owner without his consent. (*Ex parte Clapper*, 3 *Hill*, 458 ;) or though an *orchard*. (*People* v. *Com'rs of Dutchess*, 23 *Wend.* 360.)

It is obvious, also, that the question whether the road when laid out in pursuance of the application, will become a *public highway*, is a jurisdictional one. The commissioners have no authority (except where the application is for a *private* road) to lay out a road, except for the use of the public. Suppose the application should be for a road commencing and terminating at points in a cultivated field without outlets or means of egress at either end, or in a trackless forest; or bounded at the respective termini by rocks or other impassable barriers ; could such a road, when laid out, with propriety be termed a *public highway ?* At all events, would it not be a jurisdictional question whether it was so or not, and fit for review on the evidence, upon certiorari ? This court has decided, in *Holdane* v. *Trustees of Cold Spring*, (23 *Barb.* 115,) that a road closed at one end, or a road not communicating at one end with some public road or means of egress of which the public have a right to avail themselves, is not a public highway, and cannot be made such by user. This decision has just been affirmed in the court of appeals, and if affirmed

upon this ground, must be regarded as the established law. If therefore the road proposed in this case to be laid out and actually ordered to be laid out as a public highway, can never become such in consequence of its terminating in a private enclosure or a private way, it is a question which goes to the jurisdiction, and lies at the very foundation of the authority of the commissioners to act. All evidence, therefore, tending to show the character of this latter way, whether it be private or public; whether it was applied for and was laid out as a private way; whether it has been used as such; whether it is closed at one end or not; and generally how and in what manner it has been laid out and used, must be regarded as legitimate evidence before the referees, upon a jurisdictional question, and probably reviewable on certiorari.

I am inclined to think that evidence tending simply to show the benefit or utility of the proposed road; to what extent it is likely to be used by, and to serve the public; and how *large* a public is to be thus benefited or accommodated, involves an inquiry simply as to the merits of the application and the propriety of the road, and relates to questions as to which the decision of the referees is conclusive and not reviewable; and that therefore we ought not to compel the return of evidence bearing only on such questions. (*Haviland* v. *White*, 7 *How.* 154. *People* v. *Duell*, 16 *id.* 43. *People* v. *Goodwin*, 1 *Sel.* 568. *People* v. *Overseers of Barton*, 6 *How.* 26. *People* v. *Overseers of Ontario*, 15 *Barb.* 286.)

I am also inclined to think that decisions of the referees as to the admission or rejection of evidence bearing only on those questions are not reviewable upon certiorari. They are questions upon which the decisions of the referees are conclusive. They are questions not subject to review in this court. (*See cases last cited.*) It may indeed be that if the referees could be shown to have based their conclusions *entirely* upon illegal considerations, for example, if they located the road entirely outside of the route of the proposed highway; or if they refused to lay out the highway *simply* because the applicants

would not waive their claim to damages; or would not consent to be subjected to the entire expense, regarding the application in itself as meritorious and the road imperatively demanded by the public convenience; or if they decided to lay out the highway *solely* upon considerations of the benefit or accommodation it would furnish to a single applicant, and wholly uninfluenced by any conviction of its public necessity or utility, I am not prepared to say that their action in this respect would not be the subject of review in this court; nor indeed that this would not present a question of jurisdiction or of regularity. It will be time enough to decide these latter questions when they arise.

The principles above announced, applied to the present case, make the disposition of it, in most particulars, not difficult. The referees must make a further return which shall contain the evidence and the offers of evidence and their decisions thereon, in regard to the southern point or place of termination of the proposed highway; whether such terminus was in a private inclosure or in a private way; whether the road now in use from the house of Jordan Philip to the public highway leading to Mellenville is itself a public highway or a private road; what are its length, breadth and dimensions; whether it was originally applied for, laid out and recorded as a public or private way, and how it has been, in fact, used and travelled and worked; and all evidence, offers of evidence and decisions tending to throw light on these questions.

Also, such further return must contain the evidence, offers of evidence and decisions upon the questions, or tending to throw light upon the questions, whether the applicant and other owners of land on the proposed route procured the certificate of the freeholders by offering to give the land upon such proposed route in case the road was laid out; or whether such offer was made *prior* to the making of the certificate of the freeholders, and either wholly or partially withdrawn afterwards.

There may be some further matters proper to be embraced

in the further return, where the matter asked to be returned can have any possible influence upon the questions to be considered in the court of review, or are not clearly improper subjects for the consideration of that court, the referees should return the same, and as just and impartial men, having no feeling or bias between the parties, should have no hesitation in doing so. It is better that all matters upon which there can be a possible ground for debate, should be presented in the return, so as to give the court an opportunity to consider the same; and I reserve the expression of any conclusive opinion thereon until the final argument upon the completed return. An order must be prepared in conformity with this decision; and if the parties cannot agree upon the same, it may be settled upon two days' notice.

[ALBANY SPECIAL TERM, June 26, 1860. *Hogeboom*, Justice.]