THE PEOPLE, *ex rel.* Abram Odle, *vs.* JOSIAH KNISKERN and others, referees, &c.

Where there are two appeals, from decisions of different commissioners of highways, one from an order refusing to lay out a highway, and the other from an order laying out the same, although the county judge is authorized to appoint referees to hear and determine each case, by a separate order, yet there is no objection to the selection of the same referees by one and the same order, to hear and decide both appeals; they relating to and involving the same subject matter.

Evidence to show that the certificate of freeholders, as to the necessity of a proposed road, was obtained by fraud or false representations, is not admissible, on the hearing before referees of an appeal from a decision of the commissioners of highways.

Such evidence, if admitted, would not establish a jurisdictional defect which would render the proceedings void.

If the freeholders acted illegally, the proper remedy is to review their proceedings directly, and not by proof before the referees.

Where referees gave notice that they would meet *to hear and determine the appeal*, and they met accordingly and adjourned to a future day, and in due season served a notice upon the owners and occupants that they would meet on the adjourned day *to decide upon the application to lay out the highway*, and at the time and place named proceeded to take testimony, reversed the decision of the commissioner, and laid out the road immediately afterwards; *Held* that the last notice was evidently intended to embrace the laying out of the highway, and no additional notice was necessary, after the referees had decided to reverse the order of the commissioner.

Where referees, appointed to hear and determine an appeal from an order of a commissioner of highways, have not exceeded their powers, nor departed from the forms prescribed by law, their decisions upon the merits are final and conclusive.

ON the 9th of January, 1864, Norman Niver, a resident land owner and tax payer in the town of Copake, Columbia county, made application to the commissioner of highways of said town, for the laying out of a road therein, through the lands of Abram Odle, among others. A jury of freeholders of said town was convened, who, on the 18th of January, 1864, certified that said highway was necessary and proper. Wm. R. Snyder, then sole commissioner of said town, thereafter, on the 5th day of February, 1864, decided, determined and certified that said highway was un-

necessary, and refused to lay out the same, and his decision was duly filed and recorded in the town clerk's office of Copake, on the 9th day of Februrary, 1864. On the 11th day of March, 1864, said Norman Niver appealed to the Hon. Darius Peck, county judge of Columbia county, from this decision of the commissioner of highways. Thereafter, on the 26th of March, 1864, after the expiration of the term of office of said Wm. R. Snyder as commissioner of highways, said Norman Niver presented to Philo Melius, the new commissioner, a second application for the laying out of said highway, and accompanied it with, and founded

upon, the original certificate of the freeholders. Philo Melius, the new commissioner of highways, on the 7th day of April, 1864, made an order laying out the highway applied for, which was duly recorded in said town clerk's office on the 8th of April, 1864. On the 30th of May, 1864, said Abram Odle appealed to the county judge, from said last mentioned decision.

The appeal of Norman Niver from the decision of commissioner Snyder, was filed with the county judge April 6, 1864. The appeal of Abram Odle from the decision of commissioner Melius was filed with the county judge May 30, 1864. On the 22d day of June, 1864, Judge Peck, county judge of Columbia county, by one and the same written instrument, appointed Josiah Kuiskern, Egbert Silvernail and Simeon M. Collier, referees to hear both appeals. On the 26th of August, 1864, the referees gave to all parties interested a written notice, entitled in both appeals, to the effect that on the 20th day of September, 1864, they would proceed to hear and determine the said appeals and decide on the application ; at which time they met and adjourned the hearing testimony on said appeals, until the 27th of October, 1864. On the 19th of October, 1864, the referees gave notice to said Abram Odle and to the New York and Harlem Railroad Company, as owners and occupants of lands through which the proposed highway was to run, that on the said

The People *v.* Kniskern.

27th day of October, 1864, they would meet to decide upon the application for said road. On that day, the referees met at the appointed place, took testimony, adjourned to the next day, and it was then agreed that the testimony taken should apply to the appeal of Odle from the order of Melius, and they made and signed their decision in writing, whereby they reversed the decisions and orders of both commissioners appealed from, and without serving any additional notice upon the said owners and occupants, proceeded to lay out the highway applied for.

Before the introduction of any testimony, the counsel for the relator objected that the order of the county judge was void for multiplicity in improperly uniting two appeals in said appointment, and that he had no authority to make said order.

Upon the hearing, the relator Abram Odle offered to show that the certificate of the freeholders was obtained by fraud; that the application for this road represented before the jury that the Harlem Railroad Company would pay the expense of the crossing of the new road over the railroad. That the town of Taghanic would pay the expense of the road, and that the town of Copake would be relieved of the burden of building the road; and further that the old road should be shut; that the persons living on it would consent to its being shut. That these several statements were false, and were by said applicant known to be so, at the time they were made.

The counsel for the appellant objected to the proposed evidence. The objection was sustained by the referees. Various other objections were made, not necessary to be stated particularly.

On the 24th of January, 1865, the decision was removed by a common law certiorari to the Supreme Court.

*John Gaul, Jr.* for the relator.

*J. C. Newkirk,* for the respondent.

*By the Court,* MILLER, J. The appointment by the county judge of referees to hear both appeals was not, I think, illegal. Although each one of these appeals was made from the decision of a different commissioner, and the county judge was authorized and would have been justified in appointing referees to hear and determine each case, by a separate order, yet I see no objection to the selection of the same referees by one and the same order, to hear and decide both appeals. They related to and involved the same subject matter, and there appears to be an eminent propriety in disposing of them before the same tribunal. I discover nothing in the statute which provides for the appointment of referees in such cases that interferes in any way with the selection of the same referees to hear and determine the cases involving the very same question. (3 *R. S.* 314, § 8, *Edm. ed.*)

The offer made by the relator, to show that the certificate was obtained by fraud, or by the representations alleged to have been made, I think was properly excluded. The representations of the parties as to the giving of lands, and other matters which were claimed to have been stated to the purchasers, would scarcely present a case of fraud. They were, at most, irregularities, which cannot properly be presented before referees, under the circumstances existing. But even if they were fraudulent, I am not aware of any rule which would authorize an attack upon the proceedings in this form. The usual mode of reaching fraud is by a direct proceeding for that purpose, or by raising the question when it necessarily comes up by the issue, on the trial. (*Clark* v. *Underwood,* 17 *Barb.* 202. *Sandford* v. *Handy,* 23 *Wend.* 260.) If the freeholders acted illegally, the proper remedy, I think, is to review their proceedings directly, and not by proof before the referees.

The admissibility of the evidence depends, however, upon the question, whether it would establish a jurisdictional defect. In the *Commissioners of Warwick* v. *The Judges of Orange Co.,* (13 *Wend.* 432,) it was held that an appeal

The People *v.* Kniskern.

from the decision of commissioners of highways, refusing to lay out a road, the judges have no authority to entertain an objection that all the persons who acted as a jury were not freeholders, and that any irregularity in the preliminary steps, prior to the decision of the commissioners, could only be corrected by certiorari.

In *The People* v. *Commissioners of Seward,* (27 *Barb.* 94,) the case of *The Commissioners of Warwick* v. *The Judges of Orange Co.,* above cited, is criticised by HOGEBOOM, J. the learned judge remarking that : "If it embraces jurisdictional defects, it is not well considered, and is not law, and that such defects are incurable."

In the case last cited, (27 *Barb.* 94,) it was decided that a recital in the order of commissioners of highways, laying out a highway, that twelve freeholders have certified to the necessity of a road, is not conclusive evidence of the fact ; and that, being a jurisdictional fact, is open to contradiction. The question arose, upon a trial at the circuit, upon an issue made in an alternative mandamus, where an offer was made to prove that one of the twelve persons who certified to the necessity and propriety of the proposed highway, was not a freeholder. This was clearly a jurisdictional defect, which affected the whole proceeding, and which was open for controversy.

In *The People* v. *Cline,* (23 *Barb.* 197,) it was decided that the statement, in the determination of the commissioners, that twelve freeholders had met and decided that the proposed new road and alterations were necessary and proper, involved a question of jurisdiction, was not conclusive, and might be re-examined by the referees when the matter came before them. The alleged want of jurisdiction in this case consisted in the fact that one of the freeholders was next of kin to the appellant. (*See also The Town of Gallatin* v. *Loucks,* 21 *Barb.* 578.) Neither of the cases cited goes to the extent of holding that the evidence offered on this appeal

embraced a jurisdictional defect; and they rest, I think, entirely upon a different principle.

In *The People* v. *Van Alstyne et al.* (32 *Barb.* 131,) on a motion at special term, an order was granted, requiring the referees to return, whether the applicant and other owners of lands on the proposed route procured the certificate of the freeholders, by offering to give the land upon such proposed route, in case the road was laid out, or whether such offer was made prior to the making of the certificate of the freeholders, and was withdrawn afterwards. It is difficult to see how the facts stated could be of a jurisdictional nature, although it is quite probable that they may have had some bearing upon the questions presented in that case. While it might be proper to return these facts, to present the question to the court, it by no means follows that the learned judge intended to hold that they relate to a question of a jurisdictional character, and I do not think that the decision is controlling and decisive authority upon the question presented here. In fact, upon hearing the appeal in that case, at general term, with a return of the facts desired, it was expressly held by the court that they were not; and the learned judge who delivered the opinion says: "It will scarcely do to hold that such statements will avoid the finding of a jury." (See manuscript opinion of PECKHAM, J.) The decision of the court in that case was affirmed afterwards, in the Court of Appeals, thus holding that the evidence there offered did not present a jurisdictional defect.

From an examination of the authorities which bear upon the question discussed, it is evident that the offer made did not show any jurisdictional defect, and that the referees committed no error in rejecting it.

The objection made, that the order laying out the highway is void for want of jurisdiction, because the notice was not served upon the owners and occupants of the land through which the highway was to run, after the referees had decided

to reverse the order of the commissioners, I think is not well taken.

The referees possess the same powers, and are to discharge the same duties, as the judges prior to the adoption of the constitution of 1846. They are required to give written notice of the hearing of the appeal to the commissioners, which must be served at least eight days prior to the time of hearing. (1 *R. S.* 519, §§ 87, 88.) If the appeal is from a determination refusing to lay out or alter a road, and the referees shall reverse such order, then they are to lay out or alter the road applied for, and are to proceed in the same manner in which commissioners of highways are directed to proceed in like cases. (1 *R. S.* 518, § 91.) Before the commissioners determine to lay out a highway, they are required to give three days' notice, to the occupants of the land, of the time and place at which they will meet to decide the application. (1 *R. S.* 514, § 62.)

In this case the referee first gave notice that they would meet to *hear and determine the appeal.* They met accordingly, and adjourned to a future day, which was named, and in due season served a notice upon the owners and occupants that they would meet on the adjourned day, *to decide upon the application to lay out the highway,* and at the time and place named proceeded to take testimony, reversed the decision of the commissioner, and laid out the road immediately afterwards. The last notice was evidently intended to embrace the laying out of the highway, and I think an additional notice was not necessary. In the cases which hold that another notice is essential, it appears that no notice whatever had been given. (*The People* v. *The Judges of Herkimer,* 20 *Wend.* 186. *The People* v. *Robertson,* 17 *How. Pr.* 74.)

The object of the appeal is to review the proceedings of the commissioners, and it would seem, after a reversal, to be unnecessary to delay before proceeding to complete the matter by the laying out of the highway. The notice required

was, I think, virtually given, although it preceded the taking of the testimony and the reversal of the order. The referees did not complete the proceedings by a mere reversal of the order of the commissioners, but it was their duty to lay out the road, as directed, by the Revised Statutes. (*The People* v. *Barber,* 12 *Barb.* 193.) Both of these adjudications were properly included in one order, provided the necessary notice had been given prior to the laying out the road; and this had been done. In *The People* v. *Commissioners of Cherry Valley,* (4 *Seld.* 476,) it was held that on reversing the determination of the commissioners of highways the referees should make such order in relation to the laying out of the highway as in their judgment the commissioners should have made. The court say : "It was probably the duty of the referees in reversing *in whole* the determination of the commissioners in refusing to lay out the road, to make such order as the commissioners should, in their judgment, have made, that is, an order to *lay out the road* according to the prayer of the petitioner." The remarks of the learned judge, above quoted, bear the construction that there was to be but a *single* determination, without any delay in laying out the road after a reversal. Of course, unless a prior notice had been given, the act would not be valid ; but when such was the case there is no good reason why an additional notice should be required.

I think this was not a case where the application should have been for the alteration of the road, instead of the *laying out* of a new one. And as the referees have not exceeded their powers, nor departed from the forms prescribed by law, their decisions upon the merits are final and conclusive. (*People* v. *Van Alstyne,* 32 *Barb.* 131.)

The proceedings must be affirmed with costs, to be paid by the relator.

[ALBANY GENERAL TERM, March 4, 1867. *Peckham, Miller* and *Hogeboom,* Justices.]